## PELZER v. DURHAM.

1. MARRIED WOMAN'S CONTRACTS—ONUS PROBANDI.—A contract made by a married woman in 1886 is binding upon her if made as to her separate estate, but if not so made, it is not binding, and he who seeks to recover upon her contract of that date must show by evidence, direct or circumstantial, that the contract was made with reference to her separate estate.

2. IBID.—PAROL TESTIMONY.—Where a married woman is sued upon a bond and mortgage executed by her in her own name, parol testimony is admissible to show whether it is such a contract as a married woman had power to make.

3. EVIDENCE—ENTRIES ON BOOKS.—Where plaintiffs put their books in evidence, they cannot object to the consideration of a pencil memorandum thereon made by their own book-keeper, and which related to a charge entered in the account against defendant.

4. IBID.—CONSIDERATION.—Testimony is admissible to show that a written agreement by defendant's husband to ship cotton to plaintiffs was a part of the inducement for plaintiffs' loan of money on the security of defendant's contemporaneous bond and mortgage.

5. MARRIED WOMEN—LOANS.—Money actually borrowed by a married woman may become a part of her separate estate, and her contract for its repayment binding upon her, without regard to her use of it or the lender's knowledge of its intended application, but this proposition is inapplicable to a case where the married woman did not borrow the money.

6. HYPOTHETICAL CASE—IMMATERIAL RULING.—An exception to an immaterial ruling on a hypothetical case, not considered.

7. MARRIED WOMAN'S CONTRACTS—AGENCY—FACTS.—A man applied to plaintiffs for a loan of money on the security of real estate, to be used in mercantile business, and plaintiffs assented, requiring in addition an agreement to ship cotton. The applicant had recently made an assignment for the benefit of his creditors, and plaintiffs knew it. Plaintiffs employed an attorney to examine titles, who was told by the applicant that his wife wanted to borrow the money, and would give the bond and a mortgage on her property, which was done, the attorney supposing that the man was acting as agent for his wife, and knowing nothing of the intended application of the money. Before the acceptance by plaintiffs of this bond and mortgage, the husband went to plaintiffs and stated that he would use the money in the cotton business, but the money must be put for the present to the wife's credit on their books, as he could not use his own name; and he then, on a nominal consideration, agreed to ship cotton to plaintiffs, or pay a stipulated penalty. The money was put to the wife's credit on the plaintiffs' books, and was drawn out on her drafts, mostly in favor of her husband, and none of it was used by the wife. The plaintiffs charged her account, also, with the stipulated damages for the cotton not shipped. *Held*, that the testimony was sufficient to sustain the findings of fact by the Circuit Judge, that the money was lent to the husband, and that plaintiffs knew that it was to be used by him in his business.

Before WITHERSPOON, J., Marion, March, 1890.

This was an action by Pelzer, Rodgers & Co. against Margaret E. Durham, commenced November 8, 1889. The opinion states the case.

*Mr. C. A. Woods,* for appellant.

*Messrs. Johnson & Johnson,* contra.

October 8, 1892. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. The plaintiffs brought this action to foreclose a mortgage of real estate, given to secure the payment of a bond, conditioned for the payment of $4,000.

These papers bear date 5th of February, 1886, but were not, in fact, delivered to and accepted by plaintiffs until the 17th of February, 1886. The only defence was that defendant was, at the time of the execution of the papers, and still is, a married woman, the wife of S. A. Durham. So that the real question in the case is more a question of fact than of law : whether the contract evidenced by the bond and mortgage was a contract as to the separate estate of the *feme covert,* defendant. If it was, then it is clear that, under the law as it then stood, the defendant is liable; but if it was not, then it is equally clear that she is not liable. It is also well settled, that when a plaintiff brings his action to enforce a contract alleged to have been made by a married woman, the burden of proof is upon him to show that such contract was made with reference to her separate estate; but this may be shown by circumstantial evidence, or inferences drawn from the circumstances, as well as by positive or direct evidence. For example, when a married woman applies for and obtains a loan of money, the natural inference is that she wants it for her own use, and so soon as she obtains the money it becomes a part of her separate estate, and her contract to return or repay the same is a contract as to her separate estate, which she is legally liable to perform, unless such inference is rebutted by the facts and circumstances attending the transaction. It is, therefore, generally proper as well as necessary to inquire into the surrounding circumstances, where, as in this case, the papers do not show on their face that the contract was made with reference to the separate estate of the married woman. These general principles are so well settled by the numerous cases recently considered by this court, that it can scarcely be necessary to refer to them particularly ; and while not designed to be exhaustive, are such as are necessary to be kept in mind in considering the present appeal.

Without undertaking to state the reasoning of the Circuit Judge in his decree set out in the "Case," it is sufficient to say that he found as a matter of fact, "that plaintiffs advanced the $4,000 to S. A. Durham to be used in his business, and that the defendant's bond and mortgage were executed and delivered to

the plaintiffs as security for the $4,000 advanced by plaintiffs to defendant's husband, S. A. Durham;" and he, therefore, rendered judgment that the complaint be dismissed. From this judgment plaintiffs appeal upon the following grounds, alleging the following errors:

1. In admitting parol evidence to add to and vary the written contract between the plaintiffs and defendant.

2. In admitting in evidence the paper signed by S. A. Durham and the correspondence of the plaintiffs with him.

3. In admitting in evidence the pencil memorandum of the book-keeper of the plaintiffs, without proof that it was made by their authority.

4. In admitting the testimony of S. A. Durham as to the purpose for which Mrs. Durham drew drafts on plaintiffs.

5. In admitting the conversation, as stated by S. A. Durham, between F. J. Pelzer and himself, as to what S. A. Durham proposed to do with the money, when none of it was paid to him or was ever in their hands subject to his control.

6. In admitting the testimony of S. A. Durham to alter the terms of his cotton obligation.

7. In not holding, that when the alleged conversation took place between F. J. Pelzer and S. A. Durham, the contract was binding upon both parties to the mortgage, subject only to the perfection of the title.

8. In not holding, that where a married woman actually borrows money, as in this case, the money itself becomes a separate estate, and the contract is good without regard to the use made of the money, or the knowledge of what she intended to do with it.

9. In holding, that the money was ever subject to the order of S. A. Durham in the hands of plaintiffs.

10. In holding, that the "plaintiffs advanced $4,000 to S. A. Durham to be used in his business, and that the defendant's bond and mortgage were executed and delivered to plaintiffs as security for the $4,000 advanced by plaintiffs to defendant's husband, S. A. Durham."

11. In holding, that even if S. A. Durham could be regarded as having borrowed the $4,000 from plaintiffs as agent for the

defendant, the defendant's separate estate could not be held liable, if the plaintiffs knew, when they advanced the $4,000, that the money was to be used by S. A. Durham in his business.

12. In holding, that the money was used by S. A. Durham in his business, and that the plaintiffs knew it was to be so used.

13. In not holding, that plaintiffs treated with S. A. Durham only as agent for his wife.

14. In not holding, that the loan was made by the plaintiffs to Mrs. Durham; that the bond represented a valid debt against her, and the mortgage a valid encumbrance upon her property; in not decreeing foreclosure and a reference to the master to ascertain the debt and attorney's fees and expenses due on the mortgage.

It will be observed that the grounds of appeal, from one to six, inclusive, impute errors in the admission of testimony; and while we do not find that any of these grounds were pressed in the argument of appellants' counsel, yet, as they do not appear to have been abandoned, we feel bound to consider them.

We do not see that any parol evidence, adding to or varying the terms of the written contract between the parties, was either offered or admitted. All the parol evidence to which objection was made was admitted, and properly admitted, for the purpose, *not* of altering or even explaining any of the terms of the contract evidenced by the bond and mortgage, but for the purpose of throwing light upon the question, whether the contract was such an one as the married woman had the power to make. As to the objection to the pencil memorandum on plaintiffs' books, where defendant's account appears, made the basis of the third ground of appeal, it is clearly unfounded. The plaintiffs themselves put their own books in evidence, and they cannot object to what appears thereon; especially when the testimony shows that such memorandum was made by their own agent, entrusted by them with the duty of keeping the books, and that it was put there for the purpose of showing that the defendant was to be charged with commissions on all cotton not shipped to plaintiffs, and the account in the books show such a charge against defendant. As to the sixth ground, we do not under-

stand that any testimony was received, altering the terms of what is called the cotton obligation, but simply for the purpose of showing that such obligation constituted a part of the inducement or consideration for the loan of the money secured by defendant's bond and mortgage. We do not think, therefore, that any of these six grounds can be sustained.

As to the eighth ground, while the proposition of law there stated may be sound, it is not applicable to this case, until it is made to appear that the defendant actually borrowed the money, which the Circuit Judge finds, as a matter of fact, was not the case.

As to the eleventh ground, the ruling there objected to was purely hypothetical, and, in view of the facts, found immaterial to the case.

The remaining grounds of appeal need not be considered separately, as they all rest upon alleged erroneous findings of fact, or alleged erroneous inferences from the testimony. They can best be disposed of by a brief narrative of the facts and circumstances attending the entire transaction from its inception to its close; for, as we have said in the outset of this opinion, where, as in this case, the papers do not show on their face that the contract was made with reference to the separate estate of the married woman, it is not only proper, but necessary, to resort to the facts and circumstances surrounding the transaction, in order to ascertain whether the contract in question is such an one as a married woman has the power to make.

This transaction had its origin in a letter, of the 14th of January, 1886, from S. A. Durham to the plaintiffs, in which the following inquiry was made: "Upon what terms would you advance to me $3,500 to $4,000, to be used in mercantile business; I can give valuable unencumbered real estate security." To this inquiry plaintiffs responded by letter of the 16th of January, 1886, as follows: "We can make the advance of $3,500 to $4,000 you wish upon the following terms: Interest at ten per cent. per annum, and the shipment next season of at least two hundred and fifty B. C., on which we will allow you a return commission of one per cent." This

application having been referred by plaintiffs to their attorney, Charles A. Woods, Esq., at Marion, doubtless for the purpose of having the title to the property offered as security examined, and the necessary papers prepared, S. A. Durham repaired to the office of Mr. Woods, and stated to him, "that his wife proposed to borrow this money and execute the papers," but no statement was made to him as to what the money was to be used for. The bond and mortgage having been prepared under the instructions of Mr. Woods, Mrs. Durham appeared at the office and signed the same on the 5th of February, 1886 ; but the papers were not then sent to the plaintiffs, or at least were not accepted by plaintiffs at that time, for the reason, no doubt, that Mr. Woods had discovered an apparent flaw in the title, which it was thought best to have removed before the matter was finally closed. On the 17th of February, 1886, however, the objection to the title having been removed, Mr. Woods enclosed the bond and mortgage in a letter to plaintiffs, saying : "The daughters of C. C. Law, who are now of age, have executed a deed of confirmation to Mrs. Durham. This removes the cloud, and I recommend the loan. I enclose bond and mortgage and insurance policies. You will credit Mrs. Durham with $4,000. Send me check, $25 fee, and charge to her. If you approve, return papers for record and $1.25 recording." On the same day S. A. Durham also wrote plaintiffs, saying that the papers had been delivered to Mr. Woods to approve and forward, and adding these words : "The amount can stand at present to Cr. of my wife."

On the 6th of February, 1886, the paper, spoken of as the cotton obligation, was executed by S. A. Durham, which purports to be an agreement in writing between the plaintiffs and said S. A. Durham, though signed by the latter only, whereby the former agree to advance to the latter to an amount not exceeding fifty dollars, and the latter obligates himself to ship to the former, on or before the 1st of January, 1887, two hundred and fifty bales of cotton, to be sold on account of the latter at a commission of $2\frac{1}{2}$ per cent., less return commission of one per cent.; and in case of the failure to ship that amount, the plaintiffs were entitled to charge said Durham the same rate of

commissions on all the cotton not delivered or shipped to plaintiffs as stipulated. It is conceded, however, that no money was actually advanced to said S. A. Durham under the agreement designated as the cotton obligation—the amount stated therein as the consideration, fifty dollars, being merely nominal.

S. A. Durham, being examined as a witness, testified that, pending the negotiations, he visited Charleston, and had a personal interview with Mr. F. J. Pelzer, the senior member of plaintiffs' firm, in which he told him, amongst other things, that he wanted the money, proposed to be borrowed, for the purpose of going into a mercantile business. "He said, 'you can get it, but you must agree to ship us cotton outside of the loan.' I told him I was aware of that, and I was willing to do it. I told him I didn't know exactly when I would go into business. He said: 'If you leave it here any length of time, we will allow you interest; but if you are going to draw it out occasionally, I wouldn't be willing to do it.' I told him I didn't have any use then for the money. I can't use my own name; I leave it in my wife's name. He offered me the whole amount of money; he offered to pay it over to me in any way I wanted it. I left the money there at my own suggestion." After the final close of the transaction, on the 17th of February, 1886, the plaintiffs placed to the credit of defendant on their books the sum of $4,000, as of the 5th of February, 1886, and the same was drawn out from time to time on the drafts of the defendant, much the larger portion of the drafts being in favor of S. A. Durham, and the same were charged to the account of defendant on the books of plaintiffs, on which account there is also a charge of commissions on the 250 bales of cotton, no cotton having been shipped to plaintiffs. The books were introduced in evidence by the plaintiffs upon which the pencil memorandum above referred to appears, as well as the said charge for commissions, showing a balance due plaintiffs by defendant on the 9th of February, 1887, of $3,943.34. In a short time after the transaction with plaintiffs was closed, S. A. Durham went to Athens, Georgia, and there engaged in the cotton business in his own name, using all, or very nearly all,

46—37

of the money drawn from plaintiffs on the drafts of the defendant in that business; "she never received a cent of it herself."

From this brief review of the testimony, it seems to us clear that the conclusion reached by the Circuit Judge is neither without any evidence to support it, nor is it contrary to the manifest weight of the testimony. On the contrary, we think there is much in the testimony to support the conclusion reached by the Circuit Judge. It is quite certain that in the inception of the negotiation for the loan of the money, the plaintiffs had no reason to suppose that the money was borrowed for the use of any person other than S. A. Durham. He opened the correspondence, and it was conducted throughout with him, apparently on his own account and not as agent for another. The plaintiffs were informed in the outset that the money was wanted to enable Durham, who had then recently failed and made an assignment for the benefit of his creditors, to go into business; and when Durham offered to give, as security, unencumbered real estate, the plaintiffs must have known that a person in his situation could not posssibly do so, and, therefore, such security must be given, for the money which they proposed to advance him, by some one else. Hence, when the bond and mortgage of defendant was sent to them, they were bound to assume that they were intended as security for the repayment of the money which they had agreed to advance to S. A. Durham. There was no representation of any kind whatever made to plaintiffs by the defendant calculated to excite even the suspicion, that the money was for the use of defendant, further than that implied by her execution of the papers; and that was entirely consistent with the representations made to them by S. A. Durham.

The fact that the money was placed to the credit of the defendant, if it stood alone, would tend very strongly to support the view, that the loan was, in fact, made to defendant; but the undisputed testimony shows that this was done, not merely under the direction of the attorney for plaintiffs, but under the express direction of S. A. Durham, who gave as his reason for such instruction, that in his embarrassed condition he could not safely use his own name, and, therefore, wanted it put in

his wife's name; and, further, Durham testified, without contradiction, that the plaintiffs offered him the whole amount of the money, offered to pay it over to him in any way he wanted it; but that he left the money there at his own suggestion. This is corroborated by a very significant expression used in Durham's letter to the plaintiffs, of the 17th of February, 1886, informing plaintiffs that the difficulty about the title had been removed, in which this language occurs: "The amount can stand at present to Cr. of my wife," implying that, exactly in accordance with his previous conversation with plaintiffs, his wife's name was to be used, because it would not be safe for him to use his own, as his creditors might undertake to appropriate it. He, therefore, says *at present* the money can stand to the credit of his wife. This language certainly would not have been used if there had been the slightest reason to believe that plaintiffs were advancing the money to the wife, and not to the husband, upon the security of the wife's property.

Then, too, it is quite certain, not only from the undisputed testimony of S. A. Durham, but, also, from the terms of the plaintiffs' letter to him, of the 3d of March, 1887, that the agreement to ship the 250 bales of cotton was a part of the transaction for the advance of the money, and yet, when the cotton obligation, as it is called, was executed, which seems to have been prepared in Charleston under the direction of the plaintiffs, there was not a word inserted implying that defendant had anything in the world to do with the transaction, and yet upon the account of defendant, as it appears on plaintiffs' books, there is not only the pencil memorandum above referred to, but the commissions on the·cotton shipped is actually charged in the account against defendant. This is entirely inconsistent with the idea, that while the money was really advanced to the defendant, S. A. Durham was alone liable for the commissions on the cotton; but it is entirely consistent with the idea, that the whole transaction was with S. A. Durham alone, and defendant's bond and mortgage, just like that of any other friend of Durham's, was intended merely as security for Durham's obligations.

There is no testimony whatever tending to show that the

plaintiffs ever regarded, or had a right to regard, S. A. Durham as the agent of his wife; but all the testimony points to the contrary. It is quite true that Mr. Woods, in his testimony, does say that "Durham stated to me that his wife proposed to borrow this money and execute the papers;" and that "I regarded Major Durham, throughout the whole transaction in his negotiations with me, as the agent of his wife;" but it does not appear that this was ever communicated to the plaintiffs; and we see no reason why it should have been, for it would seem, from an expression used in his letter of the 17th of February, 1886, to the plaintiffs, enclosing the papers, that Mr. Woods was not invested with plenary powers, for he says: "*If you approve*, return papers for record," &c., showing that what he did was subject to the approval of plaintiffs, and all that he had to do was to examine the title to the property offered as security, and prepare the bond and mortgage. At all events, there is nothing whatever to show that plaintiffs treated with S. A. Durham as the agent of his wife, but much to show the contrary.

If the plaintiffs had supposed that they were dealing with the wife through her husband as her agent, they certainly would not have incorporated in the account a charge against her for commissions on the cotton, with which she had no connection whatever, and of which, so far as the testimony shows, she had no knowledge. It does not appear that S. A. Durham ever represented himself, either in his letters or in his conversations with plaintiffs, to be the agent of his wife, and there certainly is not a particle of testimony even tending to show that defendant ever constituted him as her agent for any purpose. In this respect the case now under consideration differs widely from *Greig* v. *Smith*, 29 S. C., 426, for there the husband was engaged in business as the true and lawful attorney of the wife, and the mortgage contained this language: "This mortgage is given for the purpose of securing advances to me through my husband, W. G. Smith, and in his own name," and in the bond she expressly authorized her husband to use the advances in his name and business *as her true and lawful attorney;* and the testimony showed that when money was sent

by express it was directed to "W. G. Smith, attorney for S. M. Smith, and so receipted for by him." There was, therefore, in that case positive evidence in writing of the husband's agency, while here there is nothing of the kind.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.