AMERICAN MORTG. CO. OF SCOTLAND, Limited, v. HARTZOG et al.

(Circuit Court, D. South Carolina. July 3, 1896.)

1. MARRIED WOMEN—MORTGAGES—SOUTH CAROLINA STATUTE.

One H., a married woman, residing in South Carolina, owned a small farm, which was conducted by her husband, the supplies being furnished by one B., and charged to the husband. The balance of account due to B. was secured by a mortgage on the farm, which was renewed each year, H. executing such mortgages. B. also held another mortgage on the farm, which had been given by H. for a debt of her own. In order to take up these mortgages, H.'s husband applied to one D. for a loan of larger

amount, on the security of the farm, stating that it belonged to his wife. When informed of this, H. objected to it, but when D. agreed to make the loan, and the papers were ready, she finally consented to sign them, though reluctantly, and after objecting to the transaction, but with a full understanding of its nature. She also made affidavit that the proceeds of the loan were to be used for her own debts, and those of no other person. Part of the money was retained by D. as commission, part was paid to B. in satisfaction of his mortgages, and the rest was paid to H.'s husband. *Held* that, as one of the prior mortgages was certainly the wife's, and she had power to recognize and pay the other, the mortgage thus given was not invalid, under the law of South Carolina, permitting a married woman to mortgage her property for the benefit of her separate estate, but not for the benefit of her husband.

2. USURY—COMMISSION FOR PLACING LOAN.

D. was the agent of the C. Banking Co. He received the application for a loan to be placed, and, through the C. Banking Co., did place it with the S. Co., which made the loan at the legal rate of interest, and had nothing to do with D.'s commissions. *Held*, that the fact that D. and the C. Banking Co. charged and received a commission in addition to the legal interest on the loan did not make the loan usurious.

John T. Sloan and Allan J. Greene, for complainant.
S. G. Mayfield and B. A. Hagood, for defendants.

SIMONTON, Circuit Judge. This is a case for the foreclosure of a mortgage given to secure certain notes, evidence of money loaned. The defenses are that the mortgage was given by a married woman for the debt of her husband, and that the contract was usurious. Mrs. E. D. Hartzog, the wife of D. S. Hartzog, owned a tract of land in Barnwell county, inherited through her parents. She resided on the land with her husband, who owned no property of his own. The planting operations were conducted by the husband, and the whole family were engaged on the farm. The supplies were obtained from Simon Brown, a merchant in Blackville, who kept the account in the husband's name. Brown secured this account by obtaining a mortgage, signed by Mrs. Hartzog, of this tract of land. Each year the account was made up, and a new mortgage given for the balance appearing to be due; the old mortgage being canceled. The new mortgage in every instance was signed by Mrs. Hartzog. A dry year supervening, the indebtedness on the balance of account largely increased, and finally Brown was anxious for a settlement. In the meantime he had guarantied or purchased another mortgage on the same land, given by Mrs. Hartzog, which it is admitted in this case was her own debt, and the validity of which is not disputed. Brown, being anxious for his money, introduced or accompanied Hartzog, the husband, to W. H. Duncan, Esq., who was the agent of the Corbin Banking Company, and so engaged in placing loans of money on mortgages of farming lands. Hartzog made application to Duncan for a loan of $3,000, which Brown says was largely in excess of the value of the tract of land owned by Mrs. Hartzog, and at the same time offered as security for the loan a mortgage of this tract, stating that it was his wife's property. Duncan took the application, and sent it on. After the application was made, Hartzog told his wife what he had done, and she did not like it. After a long delay, during which

nothing was heard of the result of the application, Duncan sent for Hartzog and his wife to come to his office, and they went there with Simon Brown. Duncan was ready to furnish the money, and prepared for signature the notes and mortgage, all of them in the name of Mrs. E. D. Hartzog. She was well aware of the purpose of these papers, and was most unwilling to sign them. She says that she declared over and over again to Duncan that the notes and mortgage were for her husband's debts, and that she was mad all the time about it, because she was called upon to mortgage her property for his debts. Her husband and Brown, who were present all the time, have not any recollection of this persistent declaration, or, indeed, of any declaration of this character on her part. Finally, Brown, as an inducement to her to sign, told her, in effect, that she could safely sign, as she was a married woman, and nothing would hurt her; "she would get it all back." On the same day, and before the papers were executed, Mrs. Hartzog made the following affidavit:

"State of South Carolina, Barnwell County. Personally appeared before me Mrs. E. D. Hartzog, who on oath says that the proceeds of the loan negotiated by W. H. Duncan, Atty. at Law, for her, with the American Mortgage Company of Scotland, is to be used for the payment of her own debts solely, and not for the payment of the debts of any other person. E. D. Hartzog.

"Sworn to before me this 19th Feb., 1887.

"W. H. Duncan.

"Witness to Mrs. Hartzog's signature: Willis J. Duncan."

Finally she signed the papers. Out of the loan Duncan took 20 per cent. for his commissions. He paid Brown $1,351.37, the amount due on his mortgage; $936.13, the amount due on the Bamberg mortgage. He reserved $4 for recording, $12.50 for insurance, and paid in a check to the order of the husband $96. This accounts for the whole $3,000. Mrs. Hartzog paid up several installments of interest; at first without pressure, and afterwards under threat of the sale under mortgage. Finally she defaulted on the interest, and this suit was brought.

The statement can be summed up as follows: At the date of this loan the tract of land, the separate property of the married woman, was incumbered by two mortgages,—one to Bamberg, which it is admitted was her valid debt; another to Brown, the last of a series of mortgages executed by her from time to time to secure a balance of account on his books in the name of and charged to the husband. Brown furnished supplies for the farm and the family, the only means of support of the husband and wife. The application for the loan was made by the husband only. The wife was informed of it afterwards. She went, with her husband, to Duncan, and, after some discussion, and perhaps resistance—certainly disinclination—on her part, she signed all the papers, including the affidavit set out at large. The evidence shows that she, in doing this, was under the impression that her act was not binding. The question is, was the execution of this mortgage a valid act on the part of this married woman? The power to contract, which the law has given to married women, has been the subject of repeated discussion and review by the supreme court of South Carolina.

Many able opinions of that court have been reported, and the law seems to be settled. A married woman, in that state, can make a valid contract in borrowing money for her own use or that of her separate estate. She cannot borrow money or incumber her property for the benefit of her husband if the lender has knowledge of this intended use. Salinas v. Turner, 33 S. C. 231, 11 S. E. 702. And this is the law even if the mortgagee opens a credit on his books with the married woman, and the money is drawn out on her orders, mostly in favor of the husband. Pelzer v. Durham, 37 S. C. 355, 16 S. E. 46. The multitude of cases applying these doctrines are reconciled in this way: Where the money is actually borrowed by the married woman, and gets into her possession, she can dispose of it as she pleases. The mortgage is good, notwithstanding the fact that the mortgagee has knowledge of her intention to dispose of it in such a manner as will not benefit her separate estate. But when the lender knows that the money is not to go into the possession of the wife,—that is, I suppose, when she gets it through an intermediary, and so cannot become part of her separate estate,— the mortgage is void. Mortgage Co. v. Felder (S. C.) 22 S. E. 601. It has also been held in South Carolina that the wife may make her husband her agent, and so bind herself by his acts. Greig v. Smith, 29 S. C. 426, 7 S. E. 610; Mortgage Co. v. Deas, 35 S. C. 42, 14 S. E. 486; Savings Inst. v. Luhn, 34 S. C. 175, 13 S. E. 357. It has also been held that, if a married woman borrow money on a mortgage of her separate estate to pay off a pre-existing mortgage, the mortgage is valid, notwithstanding the fact that the prior mortgage may itself have been invalid, and that she has the power to recognize and pay the debt secured by the prior mortgage. Reid v. Stevens, 38 S. C. 519, 17 S. E. 358. In the case at bar there can be no doubt that this married woman herself borrowed this money, —reluctantly, it is true, and after great hesitation. But she did borrow it with full knowledge of all the circumstances, and for the purpose of paying off prior incumbrances. The validity of the Bamberg mortgage she admits. The mortgage to Brown was for family supplies, primarily chargeable to the husband, and his debts. But she repeatedly, by her mortgages, executed year after year, recognized the obligation upon herself to meet this debt. We need not say that she recognized that her husband bought supplies for her farm as her agent, and so ratified the act. But under the case last quoted—Reid v. Stevens—she could recognize and pay the debt, and could borrow money to pay the mortgage securing it. There can be no objection to this mortgage because it was made by a married woman.

The next question—that of usury—is one of great difficulty. Its solution depends upon the fact who lent this money. W. H. Duncan had made his arrangements with the Corbin Banking Company to place loans on farming lands in South Carolina. In doing this he certainly acted as the acknowledged agent of the borrower. He was at the same time the agent of the Corbin Banking Company. (It is denied, and there is no reason to suspect the denial, that he was the agent of the complainants.) If, as the agent of the bor-

rower, he had negotiated this loan with the complainant, they taking it at legal rates of interest, no commission which he charged against his principal, not shared by the lender, could make the loan usurious. Grant v. Insurance Co., 121 U. S. 105, 7 Sup. Ct. 841. The evidence of unimpeached witnesses shows that the loan was negotiated with, and not by, the complainant; that they bona fide advanced the full sum borrowed, without discount or deduction of any kind; that the commissions which it is charged made the loan usurious were paid to Duncan and the Corbin Banking Company, who negotiated the loan, and who are not in any way associated with complainant in the profits of the transaction. The defense cannot be sustained. This conclusion satisfies not only the law of this case, but the substantial ends of justice. The evidence leaves no doubt that Mrs. Hartzog and her advisers thought that she was obtaining this money without any legal responsibility to repay the same. She was advised, and it is too much to be feared that she acted on the advice: "Sign. You are a married woman, and you can lose nothing." And a suspicious hint is thrown out that a sum in excess of the real value of the property was obtained on the loan. These facts, in connection with the other fact that the whole line of defense is in direct contravention of the affidavit of Mrs. Hartzog, taken on the day, and almost while she was in the act of receiving the money on the loan now sought to be repudiated, make it a matter of congratulation that the law and right concur in the conclusion reached. Bailey v. Seymour (S. C.) 20 S. E. 62.